## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

**721 BOURBON, INC.,**

       **Plaintiff,**

**vs.**

**B.E.A., INC.,**

**BRADLEY S. BOHANNAN,**

**STEPHEN J. SMITH,**

    **and,**

**ARITA M. L. BOHANNAN,**

      **Defendants.**

**CIVIL ACTION:**

**Section:**

**Judge:**

**Magistrate:**

### COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF

Plaintiff, 721 Bourbon, Inc., by its attorneys, and for its *Complaint* against the above-named Defendants, hereby alleges as follows:

### THE PARTIES

1. Plaintiff, 721 Bourbon, Inc., is a Louisiana corporation, with a principal office at 718 Orleans Street, Suite 10, New Orleans, Louisiana 70116. Plaintiff owns and operates Tropical Isle Bourbon, a bar and nightclub located in the New Orleans French Quarter, at 710 Bourbon Street. Plaintiff also is the licensor of several affiliated French Quarter establishments, which provide similar goods and services under Plaintiff's names, trade dress, and marks.

2. Defendant, B.A.E., Inc. ("BAE"), is a Louisiana corporation, with a registered office at 1201 Williams Blvd., Kenner, Louisiana 70065. Upon information and belief, BAE owns and

operates Turtle Bay Food & Spirits ("Turtle Bay"), a competitor of Plaintiff, located at 1119 Decatur Street, in the New Orleans French Quarter.

3.      Defendant, Bradley S. Bohannan, is an individual, domiciled in Kenner, Louisiana. Mr. Bohannan is the Secretary/Treasurer of Defendant, BEA; a former employee and Manager of Plaintiff; and, a former director and shareholder of Tropical Isle's Original Papa Joe's, Inc. ("Papa Joe's"), a corporation controlled by Plaintiff's shareholders, and a licensee of Plaintiff.

4.      Defendant, Stephen J. Smith, is an individual, domiciled in Slidell, Louisiana. Defendant Smith is the President of Defendant BEA; a former employee of Plaintiff's predecessor; and, a former employee and Assistant Manager of one or more of Plaintiff's licensees.

5.      Defendant, Arita M. L. Bohannan, is an individual, domiciled in Kenner, Louisiana. Mrs. Bohannan is the wife of Mr. Bohannan, and held a community property interest in the Papa Joe's stock previously owned thereby.  Mrs. Bohannan, an attorney, also serves as the registered agent of Defendant BEA, and formerly served as counsel to Plaintiff, having represented Plaintiff in general legal matters for almost eight years, and in intellectual property-related matters.  Mr. and Mrs. Bohannan are sometimes collectively referred to hereinafter as "the Bohannan Defendants."

## NATURE OF ACTION

6.      This is an action for federal trade dress infringement, infringement of an unregistered mark, unfair competition, and false designation of origin, under the Trademark Act of 1946, as amended [*The Lanham Act*, 15 U.S.C.  § 1051 *et seq*.]; injury to business reputation and trademark dilution, under LA. REV. STAT. § 51:223.1; misappropriation of trade secrets, under the *Louisiana Uniform Trade Secrets Act* [LA. REV. STAT. 51:1431 *et seq*.]; unfair trade practices, under LA. REV. STAT. § 51:1401 *et seq*., including unfair competition, and unfair or deceptive acts or practices in

the conduct of trade and commerce, under LA. REV. STAT. § 51:1405(A); breach of obligation, including breach of the covenant of good faith performance of an obligation, under LA. CIV. CODE arts. 1983-1987; and, tortious interference with business relations, under LA. CIV. CODE art. 2315, arising from, *inter alia*, the use, by Defendants, of a souvenir cup for prepared alcoholic cocktails which is confusingly similar to the trade dress and marks embodied in Plaintiff's *Hand Grenade® Yard Cup Design*, and the exploitation, by Defendants, of trade secrets and proprietary commercial and business information, acquired from Plaintiff in confidence, to mimic, and trade upon the goodwill and reputation of, Plaintiff's world-famous *Hand Grenade®* cocktail, and inherently distinctive packaging therefor, in violation of Plaintiff's longstanding prior rights, and in contravention of express written agreements to which the individual Defendants herein are signatories.

## JURISDICTION

7.      This Court has jurisdiction over this action, under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331 [actions arising under the Federal Trademark Act]; 28 U.S.C. §§ 1338(a) and (b) [acts of Congress relating to trademarks, and unfair competition claims joined therewith]; and, 28 U.S.C. § 1367(a) [supplemental jurisdiction over related actions arising under state law].

## VENUE

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c).

## STATEMENT OF FACTS

### PLAINTIFF, AND THE RIGHTS AT ISSUE

9.      Plaintiff is engaged, and has long been engaged, in the provision of bar and nightclub services in the New Orleans French Quarter, under the trade name and service mark, "Tropical Isle."

The business now known as Tropical Isle originated during the 1984 Louisiana World Exposition, and was first incorporated on October 29, 1984 as Tropical Isle, Inc.  Over the years, the business expanded, and moved from its original premises at 738 Toulouse Street, to the current location, at 721 Bourbon Street.  In late-2004, the business was acquired by Plaintiff, a corporation comprised of the same directors as Plaintiff's predecessor.

10.     Throughout the United States, and in foreign countries, Plaintiff is known for its unique specialty cocktails, served in distinctive souvenir cups, with associated toys and novelty items.  These cocktails are in great demand among tourists visiting New Orleans, and mixes for preparing the cocktails are sold by Plaintiff in interstate commerce, for private home use, and for use at private parties.  The cocktails are promoted regularly in publications with interstate and international circulation, and have been featured in local television advertisements; on major television networks, such as *MTV*, in movies, such as *Sonny*; in magazines, such as *Details*, and in various U.S. newspapers, in reports concerning New Orleans culture and nightlife.  The cocktails are also promoted widely on the World Wide Web, including at Plaintiff's own Internet site, accessible via the Uniform Resource Locator, http://www.tropicalisle.com.

11.     Since at least as early as March 1987, Plaintiff and its predecessor have used the trademark, *Hand Grenade*®, continuously, and in interstate commerce, to identify Plaintiff's flagship specialty cocktail, known as *New Orleans' Most Powerful Drink*®, and to distinguish it from the cocktails and beverages of others.

12.     Since at least as early as January 10, 1992, Plaintiff and its predecessor have served Tropical Isle's *Hand Grenade*® cocktail in a green, translucent, plastic "yard glass" container, featuring an extended neck; a widened lip; a bulbous, textured base, shaped like an oversized grenade, with anthropomorphic features, including black, oval eyes and an upturned smile; and, a

4

legend, in bold, black lettering, extending vertically down the neck, with, *inter alia*, the name of the cocktail, and a reference to its strength (hereinafter, the "Yard Cup Design").   Consumers who purchase *Hand Grenade*® cocktails in these containers are accorded discounts on refills at Tropical Isle, and at the establishments of Plaintiff's licensees.   Additionally, products incorporating and depicting Plaintiff's *Yard Cup Design* are sold separately from the *Hand Grenade*® cocktail itself. For example, Plaintiff's *Yard Cup Design* appears, or has appeared, on T-shirts, refrigerator magnets, a canned, nonalcoholic energy drink, and in the form of a collectable, ceramic edition of the cup, sold at Tropical Isle, its licensed establishments, and via Plaintiff's Web site, for those outside New Orleans, and abroad.   Photographs of Plaintiff's subject souvenir cup, and other goods sold in interstate commerce by Plaintiff which incorporate or feature Plaintiff's *Yard Cup Design*, are attached hereto as *Exhibit 1*.   Exemplary pages from Plaintiff's Web site, through which such goods may be purchased by consumers worldwide, are attached hereto as *Exhibit 2*.

13.   The recipe for the *Hand Grenade*® cocktail is also proprietary to Plaintiff, and comprises a valuable trade secret.   Although the drink is known for its sweet, melon-tinged flavor, only a handful of individuals know the original recipe, and each of Plaintiff's employees, and those of Plaintiff's licensees, are required to sign a confidentiality agreement, pledging, *inter alia*, not to disclose it.   Additionally, for well over a decade, the cocktail's flavorings have been produced in bottled, liquid concentrates, and are provided to bar staff, and sold to consumers, in that form, making it impossible, as a practical matter, to discern the formulation.   This secrecy contributes to the cocktail's mystique, as evidenced by the fact that a Google® search for "New Orleans Hand Grenade Recipe Secret," yields 1,050,0000 "hits," comprised of links to numerous Web pages, blogs, and message group postings speculating about the drink's ingredients, and sharing possible recipes, as shown in the material attached hereto as *Exhibit 3*.   The secrecy and exclusivity of this recipe is

5

also promoted heavily by Plaintiff, as shown in the true copy of a recent advertising spot for the *Hand Grenade*® cocktail, aired on local television, and posted on YouTube®, in which the packaging embodying the *Yard Cup Design* is featured, attached hereto as *Exhibit 4.*

14.     The reputations of Plaintiff's *Hand Grenade*® cocktail, and *Yard Cup Design*, have grown continuously over the past 24 and 19 years, respectively, and since long prior to the acts complained of herein, consumers have recognized the *Hand Grenade*® mark, and *Yard Cup Design*, as designating cocktails of the highest quality, renowned for their unique flavor, novel presentation, and high alcoholic content, which originate exclusively from Plaintiff.  Indeed, Tropical Isle is known as the *Home of the Hand Grenade*®, and this designation appears on exterior signage for the premises, and in advertising for Plaintiff's goods and services.  Plaintiff's *Hand Grenade*® marks, and entire family of related word marks are inherently distinctive, have acquired secondary meaning, and upon information and belief, are world-famous.  Plaintiff's *Yard Cup Design* is also inherently distinctive as packaging for Plaintiff's flagship product, and has acquired distinctiveness, and secondary meaning, as a standalone product design.

15.     Plaintiff undertakes significant efforts, and expends considerable sums each year, to ensure that *Hand Grenade*® cocktails are not served, and cannot be purchased, at any commercial establishment that is not controlled by Plaintiff's directors.  Thus, consumers wishing to enjoy an authentic *Hand Grenade*® cocktail, with or without souvenir packaging featuring the *Yard Cup Design*, may do so only at Tropical Isle, or at one of Plaintiff's licensed French Quarter establishments: (a) *Tropical Isle*® *Original* and (b) *Tropical Isle*® *Bayou Club & Music Bar*, owned by Papa Joe's, and located at 600-610 Bourbon Street; (c) *Funky Pirate*, owned by 727, Incorporated, and located at 727 Bourbon Street; (d) *Little Tropical Isle*, owned by P&E, LLC, and located at 435 Bourbon Street; and, (e) *New Orleans Grapevine*, owned by The Orleans Grapevine,

Inc., and located at 718 Orleans Street.  The directors of Papa Joe's, 727, Incorporated, and The

Orleans Grapevine, Inc., and the Members of P&E, LLC, are identical to the directors of Plaintiff

and its predecessor; namely, Earl Bernhardt and Pamela A. Fortner.

16.     Since Plaintiff's predecessor first adopted and began using its *Hand Grenade* family

of marks, including the distinctive *Yard Cup Design*, substantial time, money, and labor have been

devoted to the development, expansion, advertisement, promotion, and marketing of the *Hand

Grenade*® cocktail and related product lines.  As a result of these efforts; the extensive goodwill

built up by Plaintiff in the subject marks and trade dress thereby; and the consistent, high quality of

goods and services made, sold, and/or provided under these designations, Plaintiff's annual sales of

*Hand Grenade*-branded goods, including products incorporating or depicting the *Yard Cup Design*,

exceed three million five hundred thousand ($3,500,000.00) dollars.

17.     The State of Louisiana has been, and remains, the most important market for

Plaintiff's goods and services, including Plaintiff's flagship *Hand Grenade*® cocktail, as packaged

in the container embodying Plaintiff's *Yard Cup Design*.  Thousands of such cocktails are sold in

the New Orleans French Quarter each week by Tropical Isle and Plaintiff's licensees, and, during

the 2011 Mardi Gras season alone, more than 350,000 authentic *Hand Grenade*® cocktails were sold

in containers featuring the *Yard Cup Design*.  In fact, upon information and belief, the *Hand

Grenade*® cocktail is one of the two most popular specialty cocktails in New Orleans, and, at the

close of each Mardi Gras season, published photographs of clean-up crews clearing post-Mardi Gras

debris provide visual representations of the popularity of *Hand Grenade*® cocktails served in

containers featuring Plaintiff's *Yard Cup Design*, over other New Orleans specialty cocktails, as

shown in the material attached hereto as *Exhibit 5*.

18.     Plaintiff owns five federal trademark registrations for its *Hand Grenade*® family of

marks, including, *inter alia*, U.S. Reg. No. 2,635,498 covering, *Home of the Hand Grenade*®, for "bar services," and other registrations protecting the *Hand Grenade*® and related marks for "prepared alcoholic cocktails," "non-alcoholic mixes, syrups, and concentrates, used in making alcoholic cocktails and soft drinks," and nonalcoholic "energy drinks."  Certified copies of these registrations, and/or true copies of the United States Patent and Trademark Office records concerning same, are attached hereto as *Exhibit 6*.  These registrations are valid and subsisting, and remain in full force and effect, and four are "incontestable" under 15 U.S.C. § 1065.  Plaintiff employs the registration symbol, "®," on or in connection with the goods and services covered by these registrations; on packaging therefor, including the souvenir cups embodying the *Yard Cup Design*, and in advertising and promotions associated therewith, to provide notice of Plaintiff's federal rights.

19.    Plaintiff is also the owner of an application for federal registration of elements of the trade dress embodied in Plaintiff's *Yard Cup Design*, under U.S. App. Serial No. 85/127,707, filed on September 12, 2010, for "prepared alcoholic cocktails," in International Class 33.  The application has been approved, preliminarily, for registration, and was published in the *Official Gazette* of the United States Patent and Trademark Office on March 8, 2011.  True copies of this application, and evidence of such publication, are appended hereto as *Exhibit 7*.

20.    At no time has Plaintiff licensed or otherwise authorized Defendants to use Plaintiff's aforementioned marks, or any aspect of Plaintiff's trade dress, including that embodied in Plaintiff's *Yard Cup Design*, for goods or services covered by Plaintiff's above-mentioned registrations and application, or for goods or services unrelated thereto.  Nor has Plaintiff authorized Defendants to use, disclose, modify or otherwise exploit, Plaintiff's confidential business and trade secret-protected information, including, but not limited to, Plaintiff's marketing strategies, business contacts, trademark protection and enforcement strategies, or recipes for the *Hand Grenade*® cocktail,

Plaintiff's most valuable business asset.

DEFENDANT, BEA, AND ITS UNLAWFUL CONDUCT

21.     Defendant BEA, incorporated in Louisiana on October 13, 1997, owns and operates Turtle Bay, a bar, nightclub, and restaurant, located in the heart of the New Orleans French Quarter, at 1119 Decatur Street.  BEA is in direct competition with Plaintiff and its licensees; offers similar services; and sells identical and similar goods.

22.     Upon information and belief, on or about August 7, 2009, BEA was acquired by Defendants Bradley Bohannan and Stephen Smith, who thereafter became BEA's Secretary/Treasurer and President, respectively.  As detailed *infra*, at ¶¶ 37-50, Messrs. Bohannan and Smith are former, high-level employees and Managers of Plaintiff, Plaintiff's affiliated businesses, and/or Plaintiff's licensees, and Mr. Bohannan is a former shareholder and director of Papa Joe's – Plaintiff's licensee, and the owner of *Tropical Isle® Original* and *Tropical Isle® Bayou Club & Music Bar*.  Since August 7, 2009, BEA's registered office has been co-located with the office of Defendant Arita Bohannan, BEA's registered agent, and upon information and belief, its attorney, who formerly served as counsel to Plaintiff.  The Bohannan Defendants, and Defendant Smith, cumulatively and collectively worked for Plaintiff and/or worked on Plaintiff's behalf, for 37 years (15 years for Defendant Smith, 14 for Mr. Bohannan, and 8 for Mrs. Bohannan), immediately prior to their involvement with BEA, and its Turtle Bay establishment.

23.     As a result of these prior relationships with Plaintiff, BEA, through its controlling principals, Messrs. Bohannan and Smith, and its registered agent and attorney-advisor, Mrs. Bohannan, is thoroughly familiar with, *inter alia*, Plaintiff and its directors; Plaintiff's *Hand Grenade®* cocktail and other product lines; and the trade dress which identifies Plaintiff's goods and

services, including Plaintiff's distinctive *Yard Cup Design*. Defendant BEA is also aware that the *Yard Cup Design* and *Hand Grenade*® marks and recipes are proprietary to Plaintiff, and comprise highly-valuable, and protected assets thereof.

24.     Notwithstanding this actual knowledge by Defendants of Plaintiff's well-known, and prior, federal and state rights, upon information and belief, beginning in late-2010, BEA began to implement a carefully premeditated plan to encroach upon those rights, and cause injury to Plaintiff and its directors, by: (a) creating and serving a cocktail identical to, or closely mimicking, Plaintiff's flagship *Hand Grenade*® cocktail, in color, taste, and alcoholic content, using the original recipe, which was known by Messrs. Bohannan and Smith, or a slight variation thereon; (b) developing a translucent green, souvenir yard cup, closely mimicking Plaintiff's *Yard Cup Design*, with anthropomorphic features, and confusingly similar design elements, in which to serve their "knock-off" cocktail; (c) re-focusing the business of Turtle Bay upon this cup and cocktail; (d) communicating to the public, through confusingly similar trade dress, promotional messages, innuendo, and word of mouth, that this "knock-off" is in fact, a *Hand Grenade*® cocktail, equivalent, or superior to, Plaintiff's flagship product, made using an "original" recipe, that is inferred to be more authentic; and, (e) expanding the sales and reach of this "knock-off" cocktail throughout the French Quarter, and beyond, by: (i) opening additional Turtle Bay establishments in even closer proximity to Plaintiff's businesses; and/or, (ii) licensing other competitors of Plaintiff to sell and promote the knock-off drink.

25.     Upon information and belief, the chief elements of the foregoing plan were conceived prior to July 21, 2010, when Mr. Bohannan represented, to one or more third-party witnesses, that he knew the recipe for the *Hand Grenade*® cocktail; that Turtle Bay would begin selling a cocktail using this recipe, in a long green container with a turtle at the bottom; and, that he did not care if a

lawsuit ensued – referring, upon information and belief, to a potential lawsuit by Plaintiff.  Upon information and belief, the first step in this plan was implemented by mid-September 2010, when BEA introduced, and began selling, a green, melon-flavored cocktail called, "The Turtle," in plain, plastic cups, as evidenced by the photograph attached hereto as *Exhibit 9*.  Upon information and belief, the remaining acts outlined, *supra*, at ¶ 24, commenced in early-January 2011, in anticipation of the 2011 Mardi Gras season, and are continuing, through to the present date.

26.   Specifically, upon information and belief, by early-January 2011, BEA had purchased and received a shipment of plastic "yard glass"-styled containers (the "Turtle Cups") for use as souvenir containers for its "Turtle" cocktail, and BEA began selling prepared alcoholic cocktails in these containers, in or around mid-January 2011.  Next, on January 27, 2011, BEA's principals, Messrs. Bohannan and Smith, with Mrs. Bohannan's assistance, formed and registered a new limited liability company, under the name, "Turtle Bay on Bourbon, L.L.C.," evidencing an intent to expand the business to at least one location on the same street as Plaintiff's *Tropical Isle*®-branded establishments, as shown in the true copy of the corporate record for Turtle Bay on Bourbon, as retrieved from the Louisiana Secretary of State, attached hereto as *Exhibit 10*.  As with BEA, the membership of Turtle Bay on Bourbon consists of Messrs. Bohannan and Smith, and Mrs. Bohannan is the company's registered agent, and, upon information and belief, its attorney.  *Ex. 10*, at 2.  The registered address for this new limited liability company is the same as Mrs. Bohannan's office address, and the addresses set forth for Messrs. Bohannan and Smith are identical thereto.  *Id.*

27.   Upon information and belief, BEA's sales of Turtle cocktails, in the *Turtle Cups,* increased between February 12, 2011, and March 9, 2011, as reflected in the photographs posted to BEA's *Facebook* page for Turtle Bay during this time, attached hereto as *Exhibit 11.*

28.   A comparison of the photographs of BEA's *Turtle Cup,* shown in *Exhibit 11*, with

11

the photographs of Plaintiff's souvenir cups for authentic *Hand Grenade*® cocktails, shown in *Exhibit 1*, reveals appropriations of Plaintiff's trade dress, and confusing similarities between the *Turtle Cups* and Plaintiff's *Yard Cup Design* mark.  First, both containers are translucent, in similar shades of green.  Second, both containers are approximately the same size and weight.  Third, both bear legends, in bold, black lettering, extending vertically down their elongated necks like two stripes, with, *inter alia*, the name of the cocktail, and a reference to its strength.  Moreover, Defendant's legend, reading, "Get Shell-Shocked with the TURTLE," is a thinly-veiled reference to the effects of an exploding "hand grenade," evoking images of Plaintiff's *Hand Grenade*® marks.  Fourth, both containers have rounded, bulbous bases, with widened lips at the tops; are highly similar in overall shape and appearance; and, convey essentially the same commercial impression.  Fifth, both feature cartoon-like characters, with anthropomorphic characteristics, such as blackened, oval eyes and upturned mouths.  *See Exs. 1 & 11*.

29.     Further similarities with Plaintiff's *Yard Cup Design* are evident when BEA's *Turtle Cups* are viewed from the back.  Whereas, the front bases faintly depict short arms, a face, and a beer mug as part of the turtle character, the reverse sides thereof, ostensibly representing the "shell," are more rounded, and smooth, with raised, rectangular stippling, similar to that appearing on the bases of containers incorporating Plaintiff's *Yard Cup Design*.  In sum, the trade dress embodied in the respective containers is confusingly similar, and the *Turtle Cups* are confusingly similar to Plaintiff's well-established *Yard Cup Design* mark.

30.     The goods and services provided by Plaintiff and BEA, under their respective trade dress and marks, as aforesaid, also are identical.  The prepared alcoholic cocktails sold in the parties' respective containers are both sweet, and melon-flavored, with a deceptively high alcoholic content,

12

and BEA's cocktail was expressly designed to mimic the taste, formulation and appearance of Plaintiff's *Hand Grenade*® cocktails.  Both parties' establishments (including those of Plaintiff's licensees), also provide the same types of bar and nightclub services, featuring music, food, and a variety of alcoholic and nonalcoholic beverages.  Finally, the goods and services of Plaintiff and BEA are marketed to the same class of consumers, from the same vicinity, and are advertised and promoted through the same, or overlapping, channels of trade.  Thus, confusion among consumers is highly likely to occur if both Plaintiff and BEA continue using their respective designations.

31.    In fact, confusion is not only likely; it has already occurred.  A consumer who purchased a BEA "Turtle" cocktail, in a *Turtle Cup,* recently presented the empty *Turtle Cup* to Plaintiff, requesting a *Hand Grenade*® "refill," at the discounted price, apparently unable to meaningfully distinguish the two products, or believing that Tropical Isle and Turtle Bay are under common control.  Moreover, based on recent Facebook® postings by "friends" and "fans" of BEA's Turtle Bay "page," it appears that such confusion is precisely what BEA intended.  For example, as shown in the material attached hereto as *Exhibit 12*, on March 25, 2011, a Turtle Bay "friend" posted: "Can you ship some mix?  I need to replace this Hand Grenade crap that I have."  Turtle Bay's Facebook® moderator responded with, "That's the spirit, Cam," thereby encouraging the poster's disparagement of Plaintiff's flagship product. *Ex. 12* at 2.  Approximately three hours later, Turtle Bay's Facebook® moderator wrote, *inter alia*, "Turtle Bay, Home of . . . The Turtle," mimicking Plaintiff's federally-registered, incontestable, *Home of the Hand Grenade*® mark, covered by U.S. Reg. No. 2,635,498. *Id*. *See also Ex. 6*, at 8-9.  In response to an earlier posting, dated February 13, 2011, shortly after BEA's *Turtle Cups* were announced, one "friend" posted: "Good for you. Give Pam a run for money," referring to Plaintiff's director, Pamela Fortner. *Ex. 12*

13

at 3-4.  And, another BEA Facebook® "friend," upon seeing a picture of the *Turtle Cup*, quipped, "Hmmm,  Those 'Turtles' look at tad bit familiar," clearly referring to Plaintiff's *Yard Cup Design*. *Id.* at 4.  Upon information and belief, neither BEA nor its officers have taken any steps to avert such confusion or disparagement.  Instead, they appear to actively encourage it.

32.    Plaintiff's *Yard Cup Design* trade dress is inherently distinctive as packaging for a prepared alcoholic cocktail, and has acquired distinctiveness, and secondary meaning, as a collectable, standalone, product design.    Moreover, the elements thereof which BEA has appropriated are decorative, ornamental, and non-functional, and the purchasing public has come to identify these elements with Plaintiff's *Hand Grenade*® cocktail, its "Tropical Isle" business, and its affiliated, licensed establishments.

33.    Plaintiff's *Yard Cup Design* is also inherently distinctive as a trademark for prepared alcoholic cocktails, and for the other goods to which it is applied, such as refrigerator magnets, T-shirts, and nonalcoholic energy drinks.  Additionally, the mark has acquired distinctiveness, and secondary meaning, as a designation for Plaintiff's flagship cocktail, as a result of Plaintiff's longstanding, continuous use of the mark in interstate commerce, and in commerce between the U.S. and foreign countries; Plaintiff's considerable advertising and promotional activities; unsolicited publicity, resulting from the quality of Plaintiff's goods; and, Plaintiff's high reputation as a "first stop" for tourists and local residents visiting the French Quarter, who wish to sample the most popular, branded, specialty cocktail in New Orleans, in a uniquely designed package they can later display at home.

34.    Defendant BEA's adoption and use of the trade dress and mark embodied in, or comprising, its *Turtle Cups*, in the manner above-described, constitutes federal trade dress

14

infringement, infringement of an unregistered mark, unfair competition, and a false designation of origin under federal law, and gives rise to Plaintiff's related state law claims against BEA for injury to business reputation, trademark dilution, unfair trade practices, and tortious interference with business relations, as set forth herein.

35.    Defendant BEA's activities, as complained of herein, were and continue to be conducted willfully, in order to trade on the goodwill of Plaintiff, with actual knowledge that such conduct was and remains unlawful; that such conduct was and remains in contravention of Plaintiff's rights; and that such conduct would likely confuse, mislead, and deceive an appreciable number of relevant consumers as to the source, affiliation, and sponsorship of the goods and services emanating from BEA and/or Plaintiff, resulting in direct injury to Plaintiff's reputation and goodwill.

36.    Defendant BEA's conduct has caused, and, if allowed to continue, will continue to cause, irreparable damage to Plaintiff's business, reputation, and goodwill, and Plaintiff has no adequate remedy at law.

### The Individual Defendants, and Their Unlawful Conduct

### Defendant Bradley S. Bohannan

37.    Defendant Bradley Bohannan is a former employee and Manager of Plaintiff, as well as a former Director and shareholder of Plaintiff's affiliated business, Papa Joe's.  Mr. Bohannan's employment with Plaintiff began as early as 1996.  He was eventually promoted to Manager, and, sometime in 1999 or 2000, he was promoted to General Manager.  As General Manager, Mr. Bohannan was charged with oversight of all the "Tropical Isle" businesses controlled by Mr. Bernhardt and Ms. Fortner, as identified, *supra*, at ¶ 15,  including *Tropical Isle Bourbon*, owned by Plaintiff; *Tropical Isle® Original* and *Tropical Isle® Bayou Club & Music Bar*, owned by Papa

Joe's; *Funky Pirate*, owned by 727, Incorporated; and, *Little Tropical Isle*, owned by P&E, LLC. As a result of his long service to Plaintiff, and its principals, Mr. Bohannan became a trusted and relied-upon Manager.

38.     As a condition of his employment, Mr. Bohannan executed an *Employment and Confidential Information Agreement* ("the Confidential Information Agreement"), which prohibited him from disclosing "Company information," including, *inter alia*, "sales amounts, tips made, drink ingredients, or any other Confidential Company information" to any third parties, without advance, written authorization.  A true copy of this agreement, as executed by Mr. Bohannan on December 28, 2006, is attached hereto as *Exhibit 8*.

39.     In 2004, Mr. Bohannan became a director of Papa Joe's, and acquired a one-third interest therein.  Mr. Bohannan owed the company a fiduciary duty in his role as director.

40.     Beginning in 2009, the relationship between Mr. Bohannan and the other shareholders of Papa Joe's began to deteriorate.  On December 9, 2010, Mr. Bohannan was removed as a director of Papa Joe's.  On February 18, 2010, Mr. Bohannan and the remaining Papa Joe's shareholders entered into a *Stock Redemption Agreement* (the "Stock Agreement"), whereby Papa Joe's purchased the shares held by Mr. Bohannan.  As of that date, Mr. Bohannan was no longer an employee, director or shareholder of any business entity related to Plaintiff.

41.     The *Stock Agreement* places a number of prohibitions on Mr. Bohannan, including, but not limited to:  (I) a prohibition from making any disparaging or negative comments regarding Plaintiff; and, (ii) a prohibition from disclosing any confidential or proprietary information. Whereas, the *Stock Agreement* itself is "confidential," it cannot be attached hereto, or otherwise disclosed, prior to the entry of an appropriate protective order.

42.     As a result of Mr. Bohannan's near 14 years of employment by Plaintiff and its

affiliates, as an employee, Manager, and General Manager -- and, as a result of his position as a director and shareholder of Papa Joe's -- Mr. Bohannan had access to Plaintiff's confidential business information, including, but not limited to, financial information; information regarding marketing practices; information regarding vendors; pricing information; and, information regarding Plaintiff's development, protection and enforcement of its intellectual property. Of most importance, Mr. Bohannan has knowledge of the ingredients in, and method of preparation of, Plaintiff's flagship *Hand Grenade*® drink.

43.     Upon termination of his relationships with Plaintiff and its affiliates, Mr. Bohannan became part-owner of, and an officer in, BEA, and began participating in the operation of Turtle Bay.  Upon information and belief, Mr. Bohannan has utilized the confidential and proprietary business information, including trade secrets, obtained during his long-term employment with Plaintiff, in order to operate Turtle Bay, and compete unfairly with Plaintiff.  Particularly, Mr. Bohannan has utilized confidential information regarding Plaintiff's vendors, Plaintiff's pricing and cost structures and the *Hand Grenade*® cocktail recipe.

44.     As the driving force behind BEA's acts of infringement, who directly participated therein, and benefitted financially therefrom, and as a result of his other acts, as complained of herein, Mr. Bohannan is jointly liable, with BEA,  for its acts of federal trade dress infringement, unfair competition, and false designation of origin, and is liable for Plaintiff's related state law claims against him, for misappropriation of trade secrets, injury to business reputation and trademark dilution, unfair trade practices, and tortious interference with business relations, as set forth herein. Mr. Bohannan is also liable to Plaintiff for breach of obligation, for his violations of the *Confidential Information Agreement* and *Stock Agreement* which made BEA's unlawful conduct possible.

17

**Defendant Stephen J. Smith**

45.     Defendant Smith is a former employee of Tropical Isle, Inc., Plaintiff's direct predecessor, where he began working as a doorman/bartender in 1995, at the first Tropical Isle location, at 738 Toulouse Street.  In 2004, when Plaintiff acquired the business, Defendant Smith was promoted to Assistant Manager, and began working at *Tropical Isle® Original*, Plaintiff's affiliate and licensee, owned by Papa Joe's.

46.     As a condition of his employment, Defendant Smith also executed a *Confidential Information Agreement*, which prohibited him from disclosing "Company information," including, *inter alia*, "sales amounts, tips made, drink ingredients, or any other Confidential Company information" to any third parties, without advance, written authorization.  A true copy of this agreement, as executed by Defendant Smith, on January 13, 2007, is attached hereto as *Exhibit 13*.

47.     As a result of Defendant Smith's 15-year association with Plaintiff, and its affiliates and licensees, as both an employee and Assistant Manager, he had access to Plaintiff's confidential business information including, but not limited to, financial information, information regarding marketing practices, information regarding vendors, pricing information and information regarding Plaintiff's development, protection, and enforcement of its intellectual property.  Most significantly, Mr. Smith has knowledge regarding the ingredients and preparation of Plaintiff's *Hand Grenade®* drink.

48.     Defendant Smith resigned from Plaintiff in July 2009.  Upon termination of this relationship, he became a business partner with Mr. Bohannan as President, and part-owner of, BEA.

49.     Although Defendant Smith is not a party to the *Stock Agreement*, upon information and belief, he is aware of it, and the Bohannan Defendants' obligations thereunder.  Nonetheless,

Defendant Smith acquiesced and approved of the Bohannan Defendants' breach of the *Stock Agreement* in order to provide assistance and support to BEA.

50.     As a driving force behind BEA's acts of infringement, who directly participated therein, and benefitted financially therefrom, and as a result of his other acts, as complained of herein, Defendant Smith is jointly liable, with BEA, for its acts of federal trade dress infringement, infringement of an unregistered mark, unfair competition, and false designation of origin, and is liable for the related state law claims against him, for misappropriation of trade secrets, injury to business reputation and trademark dilution, unfair trade practices, and tortious interference with business relations, as set forth herein.

### Defendant Arita M. L. Bohannan

51.     Defendant Arita Bohannan, the wife of Defendant Bradley Bohannan, was an employee of Plaintiff's predecessor in the mid-1990's, serving as a bartender at special events, and working at Tropical Isle, on a temporary basis, while attending law school in New Orleans. Mrs. Bohannan subsequently became an attorney, and served as Plaintiff's counsel, from as early as December 2002, through early-2009.

52.     As legal counsel to Plaintiff for nearly 8 years, Mrs. Bohannan represented Plaintiff in a myriad of legal matters, including real estate, personal injury, insurance, licensing and permitting, collections, and securities matters. Indeed, Mrs. Bohannan even represented individual shareholders of Plaintiff in personal estate matters. Mrs. Bohannan essentially served as Plaintiff's General Counsel, handling all legal and regulatory matters therefor.

53.     Although Mrs. Bohannan's legal representation of Plaintiff involved a myriad of disparate issues, a significant portion of her work consisted of protecting and enforcing Plaintiff's

intellectual property rights. Specifically, Mrs. Bohannan handled numerous disputes involving the enforcement of Plaintiff's rights in and to its *Hand Grenade*® family of marks, including several actions against bar and restaurant owners in the French Quarter. True copies of exemplary trademark demand letters dispatched by Mrs. Bohannan on Plaintiff's behalf, evidencing her service in this capacity, are attached hereto as *Exhibit 14*. As a result of her position as Plaintiff's counsel, Mrs. Bohannan obtained confidential, specialized knowledge regarding the development, protection and enforcement of Plaintiff's intellectual property, and Plaintiff's strategies for handling and resolving trademark disputes.

54.     Plaintiff ceased utilizing Mrs. Bohannan's legal services in late 2009.

55.     As legal counsel for Plaintiff, Mrs. Bohannan owed fiduciary duties, including duties of loyalty thereto, and Mrs. Bohannan continues to owe certain duties to Plaintiff, including, *inter alia*, duties to maintain Plaintiff's confidences.

56.     As the wife of Defendant Bradley Bohannan, Mrs. Bohannan held a community property interest in the Papa Joe's stock formerly issued in his name. Consequently, Mrs. Bohannan was and remains a party to the *Stock Agreement* and is subject to the same prohibitions placed upon Mr. Bohannan, including but not limited to: (I) a prohibition from making any disparaging or negative comments regarding Plaintiff; and, (ii) a prohibition from disclosing any confidential or proprietary information thereof.

57.     Mrs. Bohannan also serves as the registered agent for BEA, and upon information and belief, she assists with the operation of its Turtle Bay establishment, including but not limited to providing legal services, which are similar to the legal services she previously provided to Plaintiff.

58.     Upon information and belief, Mrs. Bohannan has used confidential and proprietary business information which she obtained as legal counsel for Plaintiff, in order to assist with the

20

operation of BEA, including the operation of its Turtle Bay establishment.  In particular, upon information and belief, Mrs. Bohannan has employed her specific knowledge regarding Plaintiff's intellectual property rights and practices to advise BEA to adopt and use a substantially similar approximation of Plaintiff's *Yard Cup Design*, in the form of the infringing *Turtle Cups*, which she personally reviewed and approved.  Upon information and belief, Mrs. Bohannan also has employed her specific knowledge about Plaintiff's intellectual property rights to advise and encourage BEA to manufacture, market, and sell, prepared alcoholic cocktails using an early, proprietary, trade secret-protected, recipe for Plaintiff's *Hand Grenade*® cocktail, or a minor variation thereon, with an intent to injure Plaintiff by maximizing the similarities between the "Turtle" and *Hand Grenade*® cocktails, while attempting to create loopholes in a prospective action against BEA, by Plaintiff, for the causes of action now enumerated herein.

59.    As a driving force behind the acts complained of herein, Mrs. Bohannan is independently liable for federal trade dress infringement, unfair competition, and false designation of origin, and for the related state law claims against her, for injury to business reputation, trademark dilution, unfair trade practices, and tortious interference with business relations, as set forth herein. Mrs. Bohannan is also liable to Plaintiff for breach of obligation, for the violations of the *Stock Agreement* which, *inter alia*, made BEA's unlawful conduct possible.

60.    The activities of Defendant Smith and the Bohannan Defendants, as complained of herein, were and continue to be conducted willfully, maliciously, and with actual knowledge that such conduct was and remains unlawful; that such conduct was and remains in contravention of Plaintiff's rights; and that such conduct would likely result in direct injury to Plaintiff's business, reputation, and goodwill.

61.     Defendants' conduct has caused, and, if allowed to continue, will continue to cause, irreparable damage to Plaintiff's business, reputation, and goodwill, and Plaintiff has no adequate remedy at law.

## COUNT I

## FEDERAL TRADE DRESS INFRINGEMENT

### (Against Defendants BEA, Smith, and the Bohannan Defendants)

62.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61 hereinabove, as if more fully set forth below.

63.     This Count, arising under Section 43(a) of the *Lanham Act* [15 U.S.C. § 1125(a)], is for federal trade dress infringement.

64.     Plaintiff, and its predecessor, have used the trade dress embodied in Plaintiff's *Yard Cup Design,* as packaging for Plaintiff's *Hand Grenade*® cocktail, and in souvenir cups sold separately therefrom, continuously, and in interstate commerce, since at least as early as January 10, 1992.   Plaintiff, and its predecessor have also invested substantial time, effort, and financial resources in the promotion of the *Yard Cup Design* trade dress, in connection with the marketing and sale of Plaintiff's *Hand Grenade*® cocktails, and in advertising for Plaintiff's bar and nightclub services.

65.     The trade dress embodied in Plaintiff's *Yard Cup Design* is unique, and inherently distinctive, as applied to packaging for prepared alcoholic cocktails, and substantial elements thereof, including, but not limited to, the green, translucent color; the widened lip; the contours of the neck; the bulbous, textured base, shaped like an oversized grenade; the anthropomorphic features; and, the legend, in bold, black lettering extending vertically down the neck, are entirely nonfunctional and

ornamental.

66.     The trade dress embodied in Plaintiff's *Yard Cup Design* has also acquired secondary meaning in the marketplace, and is distinctive in the minds of purchasers of Plaintiff's goods, in that consumers have come to associate the trade dress with a single source of origin – namely, Plaintiff, and its *Tropical Isle*®-branded establishments.  Such consumers are likely to make that same association when the trade dress is used with a competitor's product.

67.     The *Turtle Cup* packaging for Defendant BEA's "Turtle" cocktail bears a striking resemblance to, and as such, is an imitation of, the trade dress embodied in Plaintiff's *Yard Cup Design*, and Plaintiff did not authorize or license BEA to use Plaintiff's distinctive trade dress for this purpose.

68.     Defendants have created, marketed, advertised, offered for sale, and sold, prepared alcoholic cocktails under trade dress strikingly similar to Plaintiff's *Yard Cup Design*, with the intention of misleading, deceiving, and/or confusing consumers as to the origin of BEA's goods, and, with the intention of trading on Plaintiff's reputation and goodwill.

69.     Defendants' marketing, promotion, offering for sale, and sale, of prepared alcoholic cocktails, under trade dress copied from, and confusingly similar to, the trade dress of Plaintiff, is likely to cause, and has caused, confusion among purchasers and potential purchasers, in violation of 15 U.S.C. § 1125(a).

70.     Defendants' unauthorized use of Plaintiff's trade dress, as above-described, comprises direct or contributory trade dress infringement, under 15. U.S.C. § 1125(a).

71.     As a direct and proximate result of Defendants' trade dress infringement, Plaintiff has suffered, and will continue to suffer loss of income, profits, and goodwill, and Defendants have acquired, and will continue to unfairly acquire, income, profits, and goodwill to which they are not

entitled.

72.    Defendants' acts of trade dress infringement will cause further, serious and irreparable injury to Plaintiff if Defendants are not restrained from further violations of Plaintiff's rights.

73.    Pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to an order, preliminarily and permanently enjoining Defendants from further acts of trade dress infringement.

74.    Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants, the damages sustained as a result of Defendants' aforesaid acts.  Plaintiff is unable to ascertain, at present, the full extent of the monetary damages it has suffered thereby.

75.    Defendants' aforesaid conduct was intentional, and without foundation in law. Accordingly, Plaintiff is entitled to an award of treble damages against Defendants, under 15 U.S.C. § 1117(a).

76.    Defendants' aforesaid acts make this an exceptional case, under 15 U.S.C. § 1117(a)(3), warranting an award of Plaintiff's attorneys' fees and costs.

## COUNT II

## FEDERAL INFRINGEMENT OF AN UNREGISTERED TRADEMARK

### (Against Defendants BEA, Smith, and the Bohannan Defendants)

77.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, and 64 through 76 hereinabove, as if more fully set forth below.

78.    This Count, arising under Section 43(a) of the *Lanham Act* [15 U.S.C. §1125(a)], is for federal infringement of an unregistered trademark.

79.    Plaintiff, and its predecessor have used the *Yard Cup Design* trademark shown in U.S. App. Serial No. 85/127,707, for, and in connection with, "prepared alcoholic cocktails,"

24

continuously, in interstate commerce, since at least as early as January 10, 1992.  Plaintiff, and its predecessor, have also invested substantial time, effort, and financial resources, in the development, promotion, and protection of this mark.

80.     Plaintiff's *Yard Cup Design* trademark is suggestive, and inherently distinctive, as applied to prepared alcoholic cocktails.  The mark has also acquired distinctiveness and secondary meaning in the marketplace, in that consumers associate the mark with a single source of origin; namely, Plaintiff, and its *Tropical Isle*®-branded establishments.

81.     Defendant BEA's *Turtle Cup* designation is highly similar to Plaintiff's *Yard Cup Design* mark*,* in appearance, connotation, and commercial impression, and has caused, and is likely to cause confusion, including initial interest confusion, mistake, and/or deception as to the source or origin of BEA's goods, in that the public, and others, are likely to believe that BEA's goods are supplied by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected to Plaintiff, all in violation of 15 U.S.C. § 1125(a).

82.     Defendants, by their above-enumerated acts, have willfully and knowingly infringed Plaintiff's rights in and to its *Yard Cup Design* trademark, and Defendants threaten to further violate and infringe Plaintiff's said rights.

83.     As a direct and proximate result of Defendants' trademark infringement, Plaintiff has suffered, and will continue to suffer, loss of income, profits, and goodwill, and Defendants have acquired, and will continue to unfairly acquire, income, profits, and goodwill to which they are not entitled.

84.     Defendants' acts of trademark infringement will cause additional irreparable injury to Plaintiff if Defendants are not restrained from further violations of Plaintiff's rights.

85.     Plaintiff is entitled to an order, preliminarily and permanently enjoining Defendants from further use of the *Turtle Cup*, or any other mark confusingly similar to Plaintiff's *Yard Cup Design*, in connection with Defendants' operations at Turtle Bay, or otherwise, under 15 U.S.C. § 1116(a).

86.     Plaintiff is entitled to recover from Defendants, the damages sustained as a result of their infringing acts, under 15 U.S.C. § 1117(a).  Plaintiff is unable to ascertain, at present, the full extent of the monetary damages it has suffered by Defendants' said acts.

87.     Defendants' aforesaid conduct was intentional, and without foundation in law. Accordingly, Plaintiff is entitled to an award of treble damages against Defendants, under 15 U.S.C. § 1117(a).

88.     The nature and scope of Defendants' aforesaid acts make this an exceptional case, warranting attorney fees, and costs, under 15 U.S.C. § 1117(a)(3).

## COUNT III

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

### (Against Defendants BEA, Smith, and the Bohannan Defendants)

89.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, and 79 through 88 hereinabove, as if more fully set forth below.

90.     This Count, arising under Section 43(a) of the *Lanham Act* [15 U.S.C. §1125(a)], is for federal unfair competition and false designation of origin.

91.     Plaintiff's distinctive *Yard Cup Design* trade dress and mark have become uniquely associated with Plaintiff, and identify Plaintiff's flagship goods to the public.  Similarly, the unique flavor of Plaintiff's world-renowned *Hand Grenade*® cocktail, serves as a source identifier for

Plaintiff's goods.

92.     Defendants' use, and threatened continued use, of confusingly similar trade dress, and a mark that is confusingly similar to Plaintiff's *Yard Cup Design* mark, in connection with a competing cocktail, developed from one of Plaintiff's own, trade secret-protected recipes, served at an establishment controlled by Plaintiff's prior, long-term employees, and bearing a flavor almost identical to that of Plaintiff's flagship product, constitute unfair competition, and false designations of origin as to the goods sold by and on behalf of Defendant BEA, and comprise false and misleading representations, in violation of 15 U.S.C. § 1125(a).

93.     As a direct and proximate result of Defendants' false designations of origin and false and misleading representations, Plaintiff has been damaged, and unless Defendant is restrained by this Court, Plaintiff will continue to suffer serious, irreparable injury.

94.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants, the damages sustained as a result of their aforesaid acts.  Plaintiff is unable to ascertain, at present, the full extent of the monetary damages it has suffered thereby.

95.     Defendant's aforesaid conduct was intentional, and without foundation in law. Accordingly, Plaintiff is entitled to an award of treble damages against Defendant, under 15 U.S.C. § 1117(a).

96.     Pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to an order, preliminarily and permanently enjoining Defendants from further acts of unfair competition, false designations of origin, and false and misleading representations, including, without limitation, the false designations, and false and misleading representations occurring at Turtle Bay.

97.     Defendant's aforesaid acts make this an exceptional case, warranting attorney fees and costs, under 15 U.S.C. § 1117(a).

## COUNT IV

### INJURY TO BUSINESS REPUTATION, AND TRADEMARK DILUTION UNDER THE LOUISIANA ANTIDILUTION STATUTE

**(Against Defendants BEA, Smith, and Bradley S. Bohannan)**

98.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, 79 through 88, and 91 through 97 hereinabove, as if more fully set forth below.

99.    This Count, arising under LA. REV. STAT. § 51:223.1, is for injury to business reputation, and trademark dilution.

100.    Defendants' use, and threatened continued use, of the confusingly similar and infringing *Turtle Cup* trade dress and mark, under the circumstances above-described, has injured, or is likely to injure, Plaintiff's business reputation, and has diluted, or will dilute, the distinctive character of Plaintiff's *Yard Cup Design* mark, through blurring and/or tarnishment, in violation of LA. REV. STAT. § 51:223.1, and to Plaintiff's irreparable harm, notwithstanding the presence or absence of confusion as to the source of Defendants' goods or services.   Unless enjoined, Defendants' aforesaid conduct will cause Plaintiff further irreparable harm, and Plaintiff is entitled to injunctive relief pursuant to LA. REV. STAT. § 51:223.1.

## COUNT V

### MISAPPROPRIATION OF TRADE SECRETS

**(Against Defendants BEA, Smith, and the Bohannan Defendants)**

101.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, 79 through 88, 91 through 97, and 100 hereinabove, as if more fully set forth below.

102.    This Count, arising under the *Louisiana Uniform Trade Secrets Act* [LA. REV. STAT.

51:1431 *et seq.*] is for misappropriation of trade secrets.

103.    Plaintiff's recipes for its flagship *Hand Grenade*® cocktail, past and present; its books and records, and the confidential information contained therein; and its other confidential business and financial information, including information regarding marketing practices, vendors, pricing, and the development, protection and enforcement of its intellectual property rights, comprise trade secrets, subject to protection under the *Louisiana Uniform Trade Secrets Act* [LA. REV. STAT. §§ 51:1431 - 51:1439].

104.    The confidential information described, *supra*, at ¶ 103, derives independent economic value by not being accessible to Plaintiff's competitors, who can profit from its use or disclosure.

105.    Plaintiff has taken more than adequate measures, under the circumstances, to maintain the secrecy of the confidential information above-described, including by having Defendants Smith and Bradley Bohannan, along with Plaintiff's other employees, sign agreements requiring that such information be kept confidential, and not disclosed to third parties.

106.    The foregoing conduct of Defendants, including, but not limited to, the disclosure, sharing, and commercial exploitation of Plaintiff's proprietary recipe for the *Hand Grenade*® cocktail, or a virtually identical recipe derived therefrom, constitutes an actual, as well as threatened, misappropriation and misuse of Plaintiff's trade secret-protected information, under LA. REV. STAT. § 51:1432(A).

107.    Defendant BEA is liable to Plaintiff for its receipt and exploitation of the trade secrets misappropriated and improperly disclosed by Defendant Smith and the Bohannan Defendants, because, at the times of such disclosures and exploitation, BEA knew that its awareness of these

trade secrets was derived from and through persons who owed duties to Plaintiff, to maintain their secrecy, and limit their use.

108.    As a consequence of the foregoing conduct, Plaintiff has suffered, and/or imminently will suffer, irreparable injury and loss.

109.    Pursuant to LA. REV. STAT. 51:1432, Plaintiff is entitled to an order, preliminarily and permanently enjoining Defendants from further misappropriation of Plaintiff's trade secrets, to eliminate their unfair commercial advantage.

110.    Pursuant to LA. REV. STAT 51:1433, Plaintiff is entitled to recover damages from Defendants, for the actual losses caused by their trade secret misappropriation, and any unjust enrichment Defendants have derived their use that is not taken into account in computing the damages for actual loss.  Plaintiff is unable to ascertain, at present, the full extent of the losses suffered as a result of Defendants' aforesaid conduct, or the extent to which Defendants have been unjustly enriched..

## COUNT VI

## UNFAIR TRADE PRACTICES

### (Against Defendants BEA, Smith, and the Bohannan Defendants)

111.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, 79 through 88, 91 through 97, 100, and 103 through 110 hereinabove, as if more fully set forth below.

112.    This Count, arising under LA. REV. STAT. § 51:1401 *et seq*., is for unfair methods of competition and unfair and deceptive acts or practices.

113.    Defendants' aforesaid activities comprise unfair methods of competition, and unfair

30

and deceptive acts and practices in the conduct of trade and commerce, in violation of LA. REV. STAT. § 51:1405, and to Plaintiff's irreparable harm.

114.    Pursuant to LA. REV. STAT. § 51:1409, Plaintiff is entitled to recover from Defendants, all actual damages sustained by Plaintiff as a result of Defendants' aforesaid acts. Plaintiff is unable to ascertain, at present, the full extent of the monetary damages it has suffered thereby.

115.    Unless enjoined, Defendants' unfair methods of competition, and unfair and deceptive acts and practices will cause Plaintiff further irreparable harm, and Plaintiff is entitled to injunctive relief, pursuant to, *inter alia*, LA. REV. STAT. §§ 51:1407 and 51:1408.

## COUNT VII

## BREACH OF OBLIGATION

### (Against Defendant Smith, and the Bohannan Defendants)

116.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, 79 through 88, 91 through 97, 100, 103 through 110, and 113 through 115 hereinabove, as if more fully set forth below.

117.    This Count, arising under LA. CIV. CODE, arts. 1983-1987, is for breach of obligation, including breach of the covenant of good faith performance of an obligation.

118.    The *Confidential Information Agreements* signed by Defendants Smith and Bradley Bohannan, on January 13, 2007 and December 28, 2006, respectively, and the *Stock Agreement* entered into by the Bohannan Defendants on February 18, 2010, constitute conventional obligations that are binding upon Defendants, and Defendants, through their aforesaid conduct, have breached these obligations, and the covenants of good faith performance attendant thereto, in contravention

of LA. CIV. CODE art. 1983.

119.    Plaintiff has been damaged by said Defendants' breaches of their obligations, and is entitled to recover all such damages sustained, pursuant to LA. CIV. CODE art. 1989.

120.    Plaintiff is further entitled to an order, preliminarily and permanently enjoining Defendants from further breaches of their aforesaid obligation, without any showing of irreparable harm, under LA. CIV. CODE art. 1987.

<u>COUNT VIII</u>

<u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>

**(Against Defendants BEA, Smith, and the Bohannan Defendants)**

121.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 61, 64 through 76, 79 through 88, 91 through 97, 100, 103 through 110, 113 through 115, and 118 through 120 hereinabove, as if more fully set forth below.

122.    This Count, arising under Louisiana Civil Code Article 2315, is for tortious interference with business relations.

123.    Defendants have improperly, intentionally, willfully, and with malice, interfered with Plaintiff's current and prospective business relations.  By using their positions as former trusted fiduciaries and agents of Plaintiff, Defendants are able to interfere with Plaintiff's current, former, and prospective customers, and such tortious interference is causing customers to transfer their business, from Plaintiff's establishment, to BEA's Turtle Bay.

124.    As a direct and proximate result of Defendants' aforesaid tortious interference, Plaintiff has been damaged, and Plaintiff is entitled to recover all such damages sustained.

125.    Plaintiff is further entitled to an order, preliminarily and permanently enjoining

Defendants from further tortious interference with Plaintiff's current and prospective business relations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for and seeks relief as follows:

**On The First, Second, and Third Claims For Relief (Counts I, II & III)**:

A.      That the Court enter a preliminary injunction, and grant permanent injunctive relief, against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin Defendants' use of the *Turtle Cup*, and any and all other trade dress, marks, and designations which infringe Plaintiff's rights in and to its *Yard Cup Design* trade dress and mark, or its *Hand Grenade*® marks, or which are confusingly similar thereto, and to restrain and enjoin Defendants' acts of unfair competition, false designation of origin, and false and misleading representations with respect thereto;

B.      That, pursuant to 15 U.S.C. § 1117(a), the Court order Defendants to pay the actual damages suffered by Plaintiff, and any and all profits resulting from Defendants' infringement of Plaintiff's aforesaid trade dress and marks, and from Defendant's acts of unfair competition, false designation of origin, and false and misleading representation with respect thereto;

C.      That, pursuant to 15 U.S.C. § 1117(a), the Court order Defendants to pay treble damages to Plaintiff; and,

D.      That, pursuant to 15 U.S.C. § 1117(a), the Court order Defendants to pay to Plaintiff the full costs of this action, including attorney fees.

**On the Fourth Claim for Relief (Count IV)**:

A.      That, pursuant to LA. REV. STAT. § 51:223.1, the Court enter a preliminary injunction,

33

and grant permanent injunctive relief against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin Defendants from any and all acts which may injure Plaintiff's business reputation or dilute the distinctive character of Plaintiff's *Yard Cup Design* or *Hand Grenade*® marks.

**On the Fifth Claim for Relief (Count V):**

A.     That, pursuant to LA. REV. STAT. 51:1432, the Court enter a preliminary injunction, and grant permanent injunctive relief against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin Defendants from further misappropriation and disclosure of Plaintiff's trade secrets; and,

B.     That, pursuant to LA. REV. STAT 51:1433, the Court order Defendants to pay the actual damages suffered by Plaintiff as a result of Defendants' misappropriation of Plaintiff's trade secrets, together with any and all unjust enrichment Defendants have derived from their use that is not taken into account in computing Plaintiff's actual damages.

**On the Sixth Claim for Relief (Count VI):**

A.     That, pursuant to LA. REV. STAT. §§ 51:1407 and/or 51:1408, the Court enter a preliminary injunction, and grant permanent injunctive relief against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin Defendants from further unfair methods of competition, and unfair and deceptive acts or practices with respect to Plaintiff;

B.     That, pursuant to LA. REV. STAT. § 51:1409, the Court order Defendants to pay the actual damages suffered by Plaintiff as a result of Defendants' unfair methods of competition, and unfair and deceptive acts and practices; and,

C.      That, pursuant to LA. REV. STAT. § 51:1409, the Court order Defendants to pay to Plaintiff, its reasonable attorney's fees and the costs of this action.

**On the Seventh Claim for Relief (Count VII):**

A.      That, pursuant to LA. CIV. CODE art. 1987, the Court enter a preliminary injunction, and grant permanent injunctive relief, against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to prevent, restrain, and enjoin Defendants from further breaches of the obligations embodied in the *Confidential Information Agreements* signed by Defendants Smith and Bradley Bohannan on January 13, 2007 and December 28, 2006, and the *Stock Agreement* signed by the Bohannan Defendants on February 18, 2010, whether or not Plaintiff is determined to have suffered irreparable harm from such breaches; and,

B.      That, pursuant to LA. CIV. CODE art. 1989, the Court order Defendants to pay to Plaintiff all damages sustained by Plaintiff as a result of Defendants' breaches of obligation.

**On the Eighth Claim for Relief (Count VIII):**

A.      That, the Court enter a preliminary injunction, and grant permanent injunctive relief, against Defendants, their agents, representatives, officers, employees, and all those acting in concert therewith, to prevent, restrain, and enjoin Defendants from inducing customers of Plaintiff, or Plaintiff's licensees and affiliates, to patronize any competing business, and to refrain from interfering with Plaintiff's relationships with its customers and employees; and,

B.      That, the Court order Defendants to pay compensatory damages to Plaintiff, for Defendants' acts of tortious interference.

**On All Claims for Relief:**

A.      That the Court order Defendants to file, and serve upon Plaintiff, within ten (10) days

following the Court's issuance of a preliminary or permanent injunction in this action, a written

report, under oath, detailing the manner and form in which Defendants have complied with such

injunction; and,

      B.     That the Court provide Plaintiff with such other and further relief as the Court deems

just and equitable.

RESPECTFULLY SUBMITTED,

Dated: April 1, 2011           By:   /s/Gregory H. Guillot  /s/Gregory D. Latham

                      Gregory H. Guillot
                      Bar Roll No. 17625
                      **Gregory H. Guillot, P.C.**
                      Two Galleria Tower Center
                      13455 Noel Road, Suite 1000
                      Dallas, TX 75240
                      Tel.: (972) 774-4560
                      Fax: (214) 515-0411
                      Email: ggmark@radix.net

                      Gregory D. Latham
                      Bar Roll No. 25955
                      **Intellectual Property Consulting, LLC**
                      201 St. Charles Avenue, Suite 114
                      New Orleans, LA 70170
                      Tel.: (504) 322-7166
                      Fax: (504) 322-7184
                      Email:  glatham@iplawconsulting.com

                      Attorneys for 721 Bourbon, Inc.