UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

721 BOURBON, INC.                          CIVIL ACTION
d/b/a TROPICAL ISLE

v.                                         NO. 11-710

B.E.A., INC., BRADLEY S. BOHANNAN,         SECTION "F"
STEPHEN J. SMITH, and ARITA M.L. BOHANNAN

ORDER AND REASONS

Before the Court are two motions: (1) the defendants' partial motion to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) and (2) the plaintiff's motion to dismiss certain counterclaims. For the reasons that follow, the defendants' motion is GRANTED in part (insofar as they seek to dismiss the plaintiff's tortious interference with business relations claim) and DENIED in part (insofar as they seek to dismiss plaintiff's other claims) and the plaintiff's motion to dismiss certain counterclaims is DENIED.

**Background**

This copyright infringement litigation, brought by one French Quarter bar against another French Quarter bar, concerns Tropical Isle's Hand Grenade® souvenir cup and cocktail and the substantially similar cocktail and cup called The Turtle, sold by Turtle Bay.[1]  Both Tropical Isle and Turtle Bay serve a green, sweet, melon-flavored drink, high in alcohol content, within a

---

[1]For the purposes of these motions, the facts of the complaint and the facts of the counterclaim are assumed to be true.

1

green translucent plastic yard container with a long neck, widened lips at the top, an oversized bulbous base, and featuring anthromorphic characteristics such as black, oval eyes, and an upturned mouth.

721 Bourbon, Inc. operates a bar and nightclub under the trade name Tropical Isle, located on Bourbon Street in the French Quarter. Earl Bernhardt and Pam Fortner are its principals.[2]  For almost 25 years, Tropical Isle has sold a famous specialty cocktail known as the Hand Grenade®.  For almost 20 years, the Hand Grenade® has been served in a green, translucent, plastic "yard glass" container with an oversized, bulbous, textured base shaped like an oversized grenade, with anthromorphic features, including black oval eyes and an upturned smile, and a legend in bold, black lettering, extending vertically down the neck, with the name of the cocktail and a reference to its high alcohol content: Hand Grenade® New Orleans Most Powerful Drink.  Tropical Isle holds five federal trademark registrations for its Hand Grenade® family of marks, including Home of the Hand Grenade® for bar services and other registrations protecting prepared alcoholic cocktails, non-alcoholic mixes and syrups, as well as energy drinks.  Tropical

---

[2]Along with 721 Bourbon, Inc., Earl Bernhardt and Pamela Fortner own and operate other establishments in the French Quarter, including Tropical Isle Original, Tropical Isle Original Papa Joe's, Tropical Isle Bayou Club & Music Bar, Funky Pirate, and New Orleans Grapevine.  These other establishments are licensees of Tropical Isle, and also serve the Hand Grenade® cocktail.

Isle also owns an application for federal registration of elements of the trade dress embodied in its yard cup design.

Since 1987 Tropical Isle and its predecessor have used the trademark, Hand Grenade® in interstate commerce to identify Tropical Isle's flagship specialty cocktail, known as "New Orleans Most Powerful Drink", and to distinguish it from the cocktails and beverages of others. Since January 1992, Tropical Isle and its predecessor have served Tropical Isle's Hand Grenade® cocktail in the green, translucent, plastic "yard glass" container.[3] Consumers purchasing Hand Grenade® cocktails in these containers get discounts on refills at Tropical Isle and at the establishments run by plaintiff's licensees.[4] Products depicting the yard cup design can also be sold separately from the Hand Grenade®: for example, the yard cup design appears on T-shirts, refrigerator magnets, a

---

[3]The recipe for the Hand Grenade® cocktail is proprietary to Tropical Isle. Tropical Isle asserts that, although the drink is known for its sweet, melon-tinged flavor, only a handful of individuals know the original recipe, and each of the plaintiff's employees, and those of plaintiff's licensees, are required to sign a confidentiality agreement, pledging not to disclose it. This secrecy, the plaintiff suggests, contributes to the cocktail's mystique, "as evidenced by the fact that a Google search for New Orleans Hand Grenade Recipe Secret yields [over one million] 'hits,' comprised of links to numerous Web pages, blogs, and message group postings speculating about the drink's ingredients, and sharing possible recipes."

[4]The cocktails are in great demand among tourists visiting New Orleans and are promoted regularly in publications with interstate and international circulation, including on major television networks, in movies, in magazines, in newspapers, and on the internet, including at the plaintiff's own site, http://www.tropicalisle.com.

canned energy drink, and in the form of a collectible, ceramic edition of the cup, sold at Tropical Isle, its licensed establishments and its website.[5]

B.E.A., Inc. operates a French Quarter bar and nightclub under the trade name Turtle Bay. Brad Bohannan and Stephen Smith are its principals and Arita Bohannan is its registered agent and attorney. Before operating Turtle Bay, the Bohannans and Smith were involved with Tropical Isle in varying capacities:

- Brad Bohannan started out as a bartender at Tropical Isle, became a manager of several Tropical Isle locations and, then, became a director and owner of one-third interest in Tropical Isle's Original Papa Joe's, Inc. After nearly 15 years with Tropical Isle, in 2009, the relationship between Mr. Bohannan, Mr. Bernhard and Ms. Fortner began to deteriorate and, as a result, Mr. Bohannan was removed as director in December 2009. In February 2010, Mr. Bohannan and the remaining Tropical Isle shareholders executed a Stock Redemption Agreement in which Mr. Bohannan's ownership interest was extinguished and Mr. Bohannan was no longer associated with Tropical Isle.
- Mr. Smith also worked for Tropical Isle for almost 15 years. He started in 1995 and was promoted to Assistant Manager in 2004. He continued to work there until he resigned in July 2009, to become a business partner with Mr. Bohannan in Turtle Bay.
- Ms. Bohannan is an attorney Mr. Bohannan's wife. She served as Tropical Isle's general counsel for nearly seven years from

---

[5]Tropical Isle says that the reputations of its cocktail and design have grown over the past 24 and 19 years and consumers have recognized the Hand Grenade® mark and the yard cup design as designating cocktails of the highest quality, renowned from their unique flavor, novel presentation, and high alcoholic content. Indeed, Tropical Isle is known as the Home of the Hand Grenade®, and this designation appears on exterior signage for the premises, and in advertising for the plaintiff's goods and services. Tropical Isle insists that its Hand Grenade® marks, and entire family of related word marks, as well as the yard cup design, are inherently distinctive, have acquired secondary meaning, and are world-famous.

2002 through 2009, and she is also a party to the Stock Redemption Agreement.[6]

As a result of their prior relationships with Tropical Isle, the Bohannans and Mr. Smith are familiar with Tropical Isle, the Hand Grenade® cocktail and cup and that these marks and recipes are proprietary to the Tropical Isle. In late 2010 the Bohannans and Smith began to implement a plan to intrude upon Tropical Isle's rights by (1) creating and serving a cocktail nearly identical in taste, color, and alcoholic content to the Hand Grenade®, by using the original recipe known by Mr. Smith and Mr. Bohannan; (2) develoing a translucent green, souvenir yard cup mimicking Tropical Isle's design, with anthromorphic features and similar design elements; (3) refocusing Turtle Bay's business based on its cup and cocktail; (4) communicating to the public through confusingly similar cocktail and cup that its knock-off is a Hand Grenade® cocktail or superior to it; (5) opening additional French Quarter establishments closer to Tropical Isle's and licensing other Tropical Isle competitors to sell and promote the knock-off drink and cup.

In January 2011 Turtle Bay began serving a cocktail in a translucent green plastic souvenir yard cup similar to Tropical Isle's Hand Grenade yard cup and cocktail, and calling it The

_____

[6]The Stock Redemption Agreement is not a part of the Court record.

Turtle.[7]   Then Mr. Bohannan and Mr. Smith, with the assistance of Ms. Bohannan formed and registered a new limited liability company Turtle Bay on Bourbon, LLC.   In addition to the similar green cocktails and cups, Turtle Bay's legend for its cocktail and cup reads "Get Shell-Shocked with the TURTLE", which references the effects of an exploding grenade, evoking images of Tropical Isle's Hand Grenade® marks.   According to Tropical Isle, Turtle Bay's decision to copy Tropical Isle's Hand Grenade Yard Cup was "an intentional attempt to trade off of the goodwill of Tropical Isle and the Hand Grenade and constitutes infringement of Tropical Isle's federally registered trademarks as well as a violation of other federal, as well as state, laws."

On April 1, 2011 Tropical Isle sued B.E.A., Inc., Arita M.L. Bohannan, Bradley S. Bohannan, and Stephen J. Smith, asserting various claims including (1) as against each defendant, federal trade dress infringement, infringement of an unregistered mark, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 arising out of the defendants' serving The Turtle's similar cocktail in similar cups; (2) as against B.E.A., Mr. Bohannan, and Mr. Smith, injury to business reputation and trademark dilution under La.R.S. § 51:223.1, the Louisiana

---

[7]At first, in mid-September 2010, The Turtle drink was served in ordinary clear plastic cups but was eventually served in the similar green, plastic, translucent yard cup similar to Tropical Isle's.

Anti-Dilution statute; (3) as against each defendant, misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act, La.R.S. § 51:1431; unfair trade practices under La.R.S. § 51:1401, including unfair competition and unfair or deceptive acts or practices in the conduct of trade and commerce, under La.R.S. § 51:1405(A); and, finally, (4) as to the individual defendants, breach of obligation, including breach of covenant of good faith performance of an obligation, under La. Civ. Code arts. 1983-1987; and tortious interference with business relations, under La. Civ. Code art. 2315, arising from the defendants' use of a souvenir cup for alcoholic cocktails that is confusingly similar to the trade dress and marks embodied in Tropical Isle's Hand Grenade® Yard Cup Design, their exploitation of trade secrets and proprietary confidential commercial and business information, their conduct intended to mimic, and trade upon the goodwill and reputation of, Tropical Isle's Hand Grenade® cocktail and packaging. All in violation of Tropical Isle's prior rights, and in contravention of express written agreements to which the defendants are signatories.

In response to Tropical Isle's complaint, the Turtle Bay parties have asserted a number of counterclaims, including copyright infringement, tortious interference with business relations, unfair trade practices, breach of obligation, and defamation. The plaintiff now seeks to dismiss two of the

defendants' counterclaims and the defendants now seek to dismiss several of the plaintiff's claims.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.[8]  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).  In considering a Rule 12(b)(6) motion, or Rule 12(c) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory

---

[8]The defendants' motion for partial dismissal and the plaintiff's motion to dismiss certain counterclaims appear to be grounded in Rule 12(c) insofar as the parties consider the allegations asserted in the defendants' answer and counterclaims and the plaintiff's answer to the counterclaim in addition to the complaint.  Regardless, the standard for deciding a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the one for deciding a motion under Rule 12(b)(6).  Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010).  "A motion brought pursuant to [Rule 12(c)] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)(citation omitted).

allegations in the complaint as true.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify pleadings that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a

9

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557) (internal quotations omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5ᵗʰ Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5ᵗʰ Cir. 2000)).  Also, the Court is permitted to consider matters of public records and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5ᵗʰ Cir. 2003).

Applying these liberal pleading standards, the Court now tests the sufficiency of the pleadings.

II.

*Defendants' Motion for Partial Dismissal*

A.  Defendants' Motion to Dismiss Claims Against Ms. Bohannan

Defendant Arita Bohannan asserts that Tropical Isle fails to allege facts sufficient to establish the following claims against

her: three Lanham Act claims, a trade secret misappropriation claim, an unfair trade practice claim, and a breach of contract claim.  The plaintiff urges the Court to deny the defendants' partial motion to dismiss, contending that the defendants ignore federal notice pleading requirements.

    1.    Lanham Act Claims

    Ms. Bohannan first seeks to dismiss the defendants' three Lanham Act claims as asserted against her for trade dress infringement (Count I), trademark infringement of an unregistered trademark (Count II), and unfair competition and false designation of origin (Count III).  Tropical Isle alleges that Ms. Bohannan was intimately familiar with Tropical Isle's business and products and that she is now the registered agent for BEA, provides legal services, and assists in the operation of Turtle Bay; according to the allegations of the complaint, Ms. Bohannan was "a driving force" behind the federal infringement and unfair competition claims.

    Each of Tropical Isle's Lanham Act claims arise under Section 43(a) of the Act, 15 U.S.C. § 1125(a), which provides a cause of action for trademark infringement and unfair competition, regardless of the registration of the mark;[9] this provision

_____

    [9]15 U.S.C. § 1114 applies to claims of infringement of registered marks:

        (1) Any person who shall, without the consent of the registrant–

provides:

    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which‐
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that

‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐‐

    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
    (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colrable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

12

he or she is likely to be damaged by such act.

Trademark law is "designed to protect the public--i.e., consumers--from confusion about a product's source and, relatedly, to protect trademark-owner's investment in the goodwill associated with their marks." ICEE Distrib., Inc. v. J & J Snack Foods Corp., 445 F.3d 841, 846 (5th Cir. 2006)(citation omitted).

A trade dress infringement claim under the Lanham Act is analogous to the common law tort of unfair competition. Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 250-51 (5th Cir. 2010)(quotation and citation omitted). "Trade dress", as the Fifth Circuit has explained, "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." Id. at 251 (citation omitted). Trade dress protection serves "to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products.'" Id. (quoting Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH, 289 F.3d 351, 355 (5th Cir. 2002)(alteration omitted)(quotation omitted)).

To prevail on a trademark infringement claim, a plaintiff must prove two things: (1) ownership in a legally protectible mark; and (2) infringement by demonstrating a likelihood of confusion. Bd. of Supervisors for Louisiana State University Agricultural and

Mechanical College v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008)(citation omitted).

As to the final Lanham Act claim, unfair competition arises when a "defendant pass[es] off his goods or services as those of the plaintiff by virtue of substantial similarity between the two," causing confusion among consumers. Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 701 (5th Cir. 1981)(citation omitted). A claim for unfair competition regarding unregistered marks arises when the "unregistered marks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source." See Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg. Co., 510 F.2d 1004, 1010 (5th Cir. 1975)(quotation omitted). Unfair competition claims, like trademark infringement claims, share the element of confusion. Thus, unsurprisingly, to state an unfair competition claim under §43(a) of the Lanham Act, a plaintiff must allege that it had valid ownership of a mark, and that the defendant's use of the mark in commerce creates a likelihood of confusion as to the origin, sponsorship, or affiliation of his goods. 15 U.S.C. § 1125; Snowizard, Inc. v. Robinson, No. 11-515, 2011 WL 2681197, at * (E.D. La. July 8, 2011)(determining that the plaintiff adequately stated a claim for both trademark infringement and unfair

competition).[10]

It is undisputed that Tropical Isle has alleged both ownership in the Hand Grenade Yard Cup and its cocktail recipe, and also has alleged that the defendants are infringing their mark by using a similar product that creates a likelihood of confusion among customers. Indeed, the defendants apparently do not dispute that Tropical Isle states claims for trade dress infringement, trademark infringement, and unfair competition as against defendants B.E.A., Smith, and Mr. Bohannan. However, as to Ms. Bohannan, the defendants contend that the complaint fails to allege facts sufficient to permit the conclusion that Ms. Bohannan (1) used Tropical Isle's trademark or trade dress in commerce and that such use was false or misleading or (2) was a driving force behind the acts of infringement. Ms. Bohannan contends that she has never been a member or an officer of B.E.A. and, therefore, she lacks the authority to make decisions on behalf of the company and has no ultimate role in deciding what cocktails B.E.A. would serve or what type of cups it would purchase. These are factual disputes not appropriately considered at the Rule 12(b)(6) dismissal stage; Ms. Bohannan will have the opportunity to submit evidence regarding her

---

[10]To establish valid ownership, a plaintiff must show that it had superior rights to use the mark in question–that it was not only the first to invent or register the mark but also the first to actually use the mark in commerce. See Bd. of Supervisors for La. State Univ. Agricultural & Mechanical College v. Smack Apparel Co., 550 F.3d 465, 475 (5th Cir. 2008).

allegedly attenuated involvement with Tropical Isle and Turtle Bay at the summary judgment stage, or at trial.  Applying the liberal pleading standard, Tropical Isle sufficiently states Lanham Act claims against Ms. Bohannan.

2.   Misappropriation of Trade Secrets Claim

Ms. Bohannan next seeks to dismiss Count V of Tropical Isle's complaint, in which the plaintiff asserts that Ms. Bohannan and the other defendants disclosed and commercially exploited Tropical Isle's proprietary recipe for the Hand Grenade® cocktail, which constitutes an actual and threatened misappropriation and misuse of Tropical Isle's trade secret-protected information.

Under the Louisiana Uniform Trade Secrets Act (LUTSA), La.R.S. 51:1431-39, a plaintiff may recover damages for the actual loss caused by the misappropriation of a trade secret.  To establish a violation of the LUTSA, the plaintiff must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation. Reingold v. Swiftships, Inc., 126 F.3d 645, 648 (5th Cir. 1997)(citations omitted)(citing La.R.S. 51:1431, 1433; other citations omitted).[11]   The plaintiff bears the burden of

_____

[11]As one state court has described the test for determining whether the LUTSA has been violated:

> The threshold inquiry in every trade secrets
> case is whether a legally protectable trade
> secret actually existed.  The second element
> is whether an express or implied contractual

16

establishing "both the existence of a legally protectable secret and a legal basis upon which to predicate relief." <u>Ponchartrain Med. Labs, Inc. v. Roche Biomedical</u>, 677 So.2d 1086, 1090 (La.App. 1 Cir. 1996). Relevant definitions from LUTSA follow:

> (1) "Improper means" includes theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.
> (2) "Misappropriation" means:
> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
> (i) used improper means to acquire knowledge of the trade secret; or
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
> (aa) derived from or through a person who had utilized improper means to acquire it;
> (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]
> ...
> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or

---

> or confidential relationship existed between the parties which obligated the party receiving the trade secret information not to use or disclose it. Finally, the [obligee] must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of the [obligee].

<u>Ponchartrain Med. Labs, Inc. v. Roche Biomedical</u>, 677 So.2d 1086, 1090 (La.App. 1 Cir. 1996) (internal citations omitted).

> potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>      (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La.R.S. 51:1431.

Bohannan contends that Tropical Isle merely alleges that she had access to its confidential information, but fails to allege facts sufficient to show that she disclosed any trade secrets; she also complains that she could not have disclosed to the other defendants what they already knew.  Tropical Isle counters that it has alleged that the intellectual property counsel, Ms. Bohannan, for many years improperly disclosed its trade secrets and this is enough.  The Court agrees.  Again, Bohannan's arguments are for another day.

     3.   Unfair or Deceptive Trade Practice Claim

Ms. Bohannan also seeks to dismiss Count VI of Tropical Isle's complaint, in which the plaintiff asserts that she and the other defendants, each of whom occupied a position of trust with Tropical Isle, have profited from their deceptive acts and unfair practices.

The Louisiana Unfair Trade Practices and Consumer Protection Law (UTPCPL – previously and still commonly referred to as LUPTA) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La.R.S. 51:1405(A).  The UTPCPL creates a private cause of action to "[a]ny person who suffers any ascertainable loss of

18

money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice...." <u>Id.</u> §1409(A).  As the Fifth Circuit has observed, "[t]he real thrust of the [UTPCPL], modeled after the Federal Trade Commission Act, 15 U.S.C. § 45, is to deter injury to competition." <u>Reingold v. Swiftships, Inc.</u>, 126 F.3d 645, 652-53 (5th Cir. 1997)(citations omitted).

Conspicuously absent from the statute is an enumeration of the sorts of conduct that constitutes "unfair or deceptive method, act or practice."  This is left up to the courts, which

> have interpreted these terms to include "'a practice that
> is unethical, oppressive, unscrupulous, or substantially
> injurious,'"; fraud, misrepresentation, deception, but
> not mere negligence; acts offensive to established public
> policy and immoral, unethical, oppressive, unscrupulous,
> or substantially injurious to consumers....

<u>Reingold v. Swiftships, Inc.</u>, 126 F.3d 645, 653 (5th Cir. 1997)(internal citations omitted).  The statute, on the other hand, does not "prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." <u>Id.</u> (citations omitted).  "Significantly," the Fifth Circuit has observed, "under the [UTPCPL], the Louisiana courts appear to zealously guard against allowing managers, employees, and persons in a special position of trust to profit from their wrongdoing." <u>See id.</u> (citations omitted); <u>see also</u> <u>Turner v. Purina Mills, Inc.</u>, 989 F.2d 1419, 1422 (5th Cir. 1993)(reviewing cases decided under LUPTA and stating that the

19

LUPTA aims to punish "breaches of ethical standards arising from the employer-employee relationship")(citations omitted).

Bohannan seeks dismissal of this claim against her on the ground that the plaintiff has failed to present a viable claim for infringement or misappropriation of trade secrets.  Because the Court has already determined that Tropical Isle has stated claims under both of these theories, the Court disagrees.  Assuming Tropical Isle's factual allegations are true, the plaintiff has stated a claim against her for unfair trade practices.

4.   Breach of Obligation Claims

Bohannan next contends that Tropical Isle has failed to plead a breach of contract claim against her because (a) there are no allegations that she breached the non-disparagement clause contained in the Stock Redemption Agreement and (b) the plaintiff's allegation that she breached the Agreement's confidentiality provision is without merit because she could not have disclosed information for use in the operation of Turtle Bay of which its operators (the other defendants) were not aware.  The Court finds no allegations in Tropical Isle's complaint to support a claim that Bohannan breached any non-disparaging comments provision; it would seem, then, that any such claim (assuming one was asserted, would be subject to dismissal).  Any analysis of the Stock Redemption Agreement at this point is merely theoretical, given that the Agreement is not a part of the record.  Accordingly, without

20

knowing the contents of the contract, which is the law between the parties, the Court is unable to make any determinations regarding whether a breach of obligation claim has been sufficiently stated.

B.   Tropical Isle's Tortious Interference with Business Relations Claims Against All Defendants

All of the defendants assert that Tropical Isle fails to allege facts sufficient to state a claim for tortious interference with business relations. At ¶ 123 of their complaint, the plaintiff asserts the following:

> Defendants have improperly, intentionally, willfully, and with malice, interfered with Plaintiff's current and prospective business relations. By using their positions as former trusted fiduciaries and agents of Plaintiff, Defendants are able to interfere with Plaintiff's current, former, and prospective customers, and such tortious interference is causing customers to transfer their business, from Plaintiff's establishment, to BEA's Turtle Bay.

In other parts of the complaint, the plaintiff asserts that the defendants, who had a long history of working for and with Tropical Isle, implemented "a carefully premeditated plan" in which, using the Hand Grenade cocktail recipe, they mimicked the Hand Grenade cocktail and the distinctive cup in which it is served, refocused their business on their knock-off cocktail and cup, and otherwise improperly encouraged public confusion in order to divert customers from Tropical Isle to Turtle Bay. The defendants contend that the plaintiff has failed to assert facts sufficient to allege the actual malice element of a tortious interference claim. The Court

21

disagrees.

Louisiana courts recognize a claim for tortious interference with business relations, in which a plaintiff must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10 (5th Cir. 1992). The purpose of the claim is to protect businesses from malicious interference; only an interference that is designed to protect an actor's legitimate interest is permitted. Dussony v. Gulf Coast Inv. Corp., 660 F.2d 594, 602 (5th Cir. 1981)(determining that the plaintiff failed to allege malice but noting that the appropriate course was to permit the plaintiff to amend his complaint to make the necessary allegations).

Louisiana courts generally look with disfavor upon a claim for tortious interference with business relations. See JCD Marketing Co. v. Bass Hotels and Resorts, Inc., 812 So.2d 834, 841 (La.App. 4 Cir. 2002)("Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor"). In fact, the state courts have limited the strength of such a claim by imposing an element of actual malice to the claim. Id. (citing Dussony, 660 F.2d at 602). Like other claims that require proof of bad intent, this malice element is almost impossible to prove, especially because in most cases corporations act to maximize profits, not to harm other businesses. Id. (citing George Denegre,

Jr., et al., <u>Tortious Interference and Unfair Trade Claims:</u>
<u>Louisiana's Elusive Remedies for Business Interference</u>, 45 Loy.
L.Rev. 395, 401 (1999)).

The defendants dispute only whether the plaintiff has
sufficiently asserted the malice element of their claim. The
plaintiff counters that they have pled sufficient facts supporting
entitlement to relief and that the defendants improperly seek to
require that the plaintiff establish malice at this early pleading
stage. Taking the plaintiff's allegations as true, the Court finds
that the complaint in its present form falls short of alleging
facts that support a conclusion that the defendants acted with
malice. Plaintiff only alleges that the relationship among the
parties "deteriorated" but fail to link that failed relationship
with copying the Hand Grenade® product.

III.

*Plaintiff's Motion to Dismiss Certain Counterclaims*

Tropical Isle seeks to dismiss certain counterclaims asserted
by the defendants. Because the Court finds that the defendants
have sufficiently stated a claim for copyright infringement and
because the Stock Redemption Agreement is not in the record,
Tropical Isle's motion to dismiss is DENIED.

A.  Count II Copyright Infringement Claim

In Count II of the defendants' counterclaims, Mr. Bohannan
alleges that he, alone, in February 1997 designed the Hand Grenade

23

yard cup and that, in May 2011, he filed an application to register his copyright in the design.  Accordingly, he asserts that Tropical Isle is liable for copyright infringement.  Tropical Isle seeks to dismiss this copyright infringement counterclaim on the ground that, even taking as true the claim that Mr. Bohannan designed the Hand Grenade cup (which Tropical Isle disputes), Mr. Bohannan did so while employed at Tropical Isle and, therefore, his design is a work-made-for hire.

A plaintiff asserting a copyright infringement claim must allege ownership of a valid copyright and copying of the constituent elements of the original work.  Feist Publ'ns, Inc. v. Rural Tel. Service Co., 499 U.S. 340, 361 (1991).  The plaintiff challenges only the element of Mr. Bohannan's asserted ownership. Pursuant to the Copyright Act, copyright ownership vests in the work's author.  17 U.S.C. § 201(a).  As a general rule, the author is the person that actually translates an idea into a fixed, tangible expression entitled to copyright protection.  Id. at § 102; Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).  However, an exception is made if a work is shown to be "made for hire"; in that case, the employer and not the employee is considered the owner of the copyright in the work.  See 17 U.S.C. § 201(b).  Section 201(b) provides:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written

24

instrument signed by them, owns all of the rights comprised in the copyright.

A "work made for hire" is one of two things; only the first is relevant here: "(1) a work prepared by an employee within the scope of his or her employment...." 17 U.S.C. § 101. The Supreme Court has held that a work made for hire "can arise through one of two mutually exclusive means, one for employees and one for independent contractors" and, based on the statute, "the classification of a particular hired party should be made with reference to agency law." Reid, 490 U.S. at 743. The Supreme Court observed that the following factors are relevant in classifying a hired party:

> the hiring party's right to control the manner and means by which the product is accomplished...[;] the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hiring party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52 (citing Restatement (Second) of Agency § 220(2)). If these factors counsel in favor of finding that someone was an employee, the Court must then determine whether that person's work was created within the scope of employment; in making this determination, the Court considers whether the work (1) was the type of work that the plaintiff was hired to perform; (2) occurred substantially within the authorized time and space limits of the

job; and (3) was performed, at least in part, to serve the
employer. Fleurimond v. New York University, 722 F. Supp. 2d 352,
356 (E.D. N.Y. 2010) (citations omitted).

Because of the fact-intensive nature of the inquiry into
whether Mr. Bohannan was an "employee" of Tropical Isle and whether
he designed the cup within the scope of this employment within the
meaning of the Copyright Act and agency law, this issue is not the
proper target of a dismissal motion. See Fleurimond, 722 F. Supp.
2d at 355-56.

B.  Count V Breach of Covenant Not to Sue

In Count V of their counterclaims, the defendants allege that
the Stock Redemption Agreement releases the Turtle Bay defendants
from any liability and, therefore, prohibits Tropical Isle from
asserting claims against them.  Tropical Isle admits that the Stock
Redemption Agreement contains a release clause and covenant not to
sue.   However, Tropical Isle contends that their claims fall
outside the scope of that clause, which limited claims that
"ar[ose] on or prior to the effective date of the Stock Redemption
Agreement."  Tropical Isle maintains that the claims it asserts
against the Turtle Bay parties did not occur until January 2011 or
later.  Unfortunately, as already noted, the Court cannot determine
whether any claim has been stated or defeated by the parties' Stock
Redemption Agreement because that Agreement, which would constitute
the applicable law is not of record.

Accordingly, the defendants' motion for partial dismissal pursuant to Rule 12(b)(6) is GRANTED in part (insofar as they seek to dismiss the plaintiff's tortious interference with business relations claim) and DENIED in part (insofar as it seeks to dismiss the plaintiff's other claims) and the plaintiff's motion to dismiss certain counterclaims is DENIED.

New Orleans, Louisiana, August 25, 2011

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE